UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CRICKET COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| PLATINUM PCS, LLC | ) | |
| and Ali Tharani | ) | |
| | ) | |
| Defendants. | ) | |

## TEMPORARY RESTRAINING ORDER

This matter is before the Court upon Cricket Communications, Inc.'s Motion for Temporary Restraining Order. The Court, having considered the motion, the memorandum in support thereof, Cricket's Verified Complaint, the declaration of Irene Topacio and the entire record, and being otherwise sufficiently advised hereby finds as follows:

1.    This is an action for temporary restraining order, preliminary injunction, and permanent injunction to prevent Defendants Ali Tharani and Platinum PCS, LLC (the unincorporated and incorporated entities are collectively referred herein to as "Platinum PCS"); its owners, shareholders, members, officers, partners, and directors ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest ("Affiliated Entity"), including Platinum PCS Partners; its principals, officers, directors, employees, agents, and any successor entity, including Platinum PCS Partners; and all persons acting in concert with or in active participation with them from violating Platinum PCS's Dealer Agreement and amendments thereto ("Dealer Agreement") with Cricket, in which Platinum PCS agreed, among other things, that it would not compete with Cricket or solicit, divert, or attempt to divert its customers for a

1

period of six months following termination of the Dealer Agreement. Pursuant to the Dealer Agreement, the parties agreed that all injunctive disputes relating to the Dealer Agreement may be brought in this Court.

2.     Pursuant to the Dealer Agreement, Platinum PCS agreed to promote and sell Cricket's products and services exclusively. As an exclusive dealer, Platinum PCS agreed as follows:

> . . . that within a two (2) mile radius of each of its store locations and during the term of this Agreement, neither Dealer nor any Affiliated Persons and/or Affiliated Entity will (i) directly or indirectly sell, contract to sell, or promote the sale of any non-Cricket affiliated, pre-paid or paid-in-advance wireless phone, wireless internet data service, or service plan that offers unlimited local and/or long distance calls or wireless internet service for a flat price, or (ii) offer the wireless telephones and/or data modems and/or services of any other commercial wireless telephone carrier in Dealer's store locations while Dealer is also selling devices pursuant to this Agreement unless such phone has been configured for service on Cricket's wireless network.

Dealer Agreement, ¶ 8(h).

3.     The Dealer Agreement provides that Platinum PCS shall not divert Cricket customers during the term of the agreement and for six month following termination:

> During the term of this Agreement and for a period of six (6) months after termination of this Agreement (whether voluntary or involuntary, with or without cause), Dealer, its Principals, officers, directors, employees, agents and any successor entity to Dealer shall not at any time (i) request any Customer to curtail or cancel its business with Cricket, or (ii) otherwise solicit, divert or attempt to divert any such Customer from patronizing Cricket.

Dealer Agreement, ¶ 8(a).

4.     Pursuant to the Dealer Agreement, Platinum PCS acknowledged that it received confidential and proprietary information of Cricket, including its customer lists, and agreed on behalf of itself, and its principals, officers, directors, employees, agents and successor entities,

2

not to use or disclose Cricket's confidential and proprietary information during the term of the Agreement and for *three years* thereafter. Dealer Agreement, ¶¶ 8(b)-(c).

5.    The Dealer Agreement contains a six-month non-compete period after termination or expiration of the agreement:

> Non-Compete Period After Termination.  Dealer covenants and agrees that during the Term of this Agreement and for a period of at least *six (6) months* following any termination or expiration of this Agreement, Dealers shall not, and will cause its owners, shareholders, members, officers, partners, and directors, ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest ("Affiliated Entity"), not to directly or indirectly (including by licensing) engage or participate in, or acquire, manage, operate, control or participate in the management, operation or control of, either alone or jointly, any entity that engages in the sale, resale or distribution of any wireless telephone or wireless internet data service including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price, within a two (2) mile radius of Dealer's Cricket store locations.  If Dealer breaches this covenant, then, in addition to any other legal or equitable remedy that Cricket may have, the post-termination period of this covenant will be extended for one (1) day for each day during which the Dealer's breach was ongoing.

Dealer Agreement, ¶ 8(g) (emphasis added).

6.    Pursuant to the Dealer Agreement, "Cricket shall have the right and privilege to obtain, without the necessity of posting bond therefore, and in addition to any other remedies that may be available, equitable relief, including preliminary, temporary, and permanent injunctive relief, to cease or prevent any actual or threatened violation." Dealer Agreement, ¶ 8(i).

7.    On March 11, 2013, Ali Tharani executed a renewal of the Dealer Agreement.

8.    On June 1, 2013, Platinum PCS was operating eight (8) Cricket locations in Maryland.

3

9. In a letter dated June 20, 2013, Platinum PCS informed Cricket that Platinum PCS was closing all eight (8) Cricket locations.

10. Cricket responded on June 26, 2013, stating that Platinum PCS's purported notice of termination letter of June 20, 2013, was ineffective because the Dealer Agreement required a 60-day notice for a dealer to terminate.

11. On July 14, 2013, the Cricket store location at 1928 #C Pulaski Hwy. Platinum PCS was conducting a training session with Platinum employees to inform them that the store would be switching to Metro PCS on July 22, 2013. A former Cricket employee who went to work for Metro in May 2013 was conducting this training. Platinum employees were instructed to promote Metro as a wireless provider until the official transition date of July 22, 2013. Employees were given binders with Metro material but were not allowed to take these materials.

12. On July 17, 2013, Cricket officially terminated the Dealer Agreement with Platinum PCS and stated that Platinum PCS was in material breach of the Dealer Agreement.

13. Also on July 17, 2013, Cricket received an email from Ali Tharani stating that Platinum PCS would be closing "all its Cricket doors on 07/19."

14. On July 18, 2013, a review of the Metro PCS website at www.metropcs.com revealed that several of the former Cricket locations were being listed as Metro locations even though these locations had not even officially closed their doors as a Cricket dealership. The former Cricket locations are listed on the MetroPCS website:

1928 Pulaski Hwy, Edgewood, Maryland
7954 Belair Road, Baltimore, Maryland
1010 Beards Hills Road, Aberdeen, Maryland
Seven Saint Paul Street, Baltimore, Maryland
1222 Eastern Blvd., Essex, Maryland
212 South Bridge Street, Elkton, Maryland

4

15.    Despite the obligations under the Dealer Agreement, after Platinum PCS closed its locations as a Cricket dealer between the dates of July 15 – July 22, 2013, it, directly or indirectly, will open all or several of the eight (8) locations under the store name Metro PCS to provide services of other wireless carriers.

16.    Platinum PCS's actions constitute violations of the Dealer Agreement, including the non-compete provision, the non-diversion provision, and the confidentiality provisions of the Dealer Agreement.

17.    Cricket will suffer immediate, substantial, and irreparable harm—the continued diversion of its present customers at the former Cricket locations operated by Platinum PCS to a competing carrier's services and products—unless Platinum PCS is enjoined from unlawfully and unfairly competing with Cricket in violation of the Dealer Agreement. Because a suit for an injunction deals with future threatened violations, an injunction should issue to prevent future harm, "although no right has yet been violated." Swift & Co. v. United States, 276 U.S. 311, 326 (1928).

18.    Cricket has a legitimate business interest in maintaining its customers. During the term of the Dealer Agreement, Platinum PCS and its employees served as the face of Cricket to its customers: selling Cricket products, performing customer service, and accessing Cricket systems. Cricket's customers do not have long-term contracts. As a result, Cricket customers visit Cricket stores to pay their monthly bills and to renew their service for the next month. Every customer has the option at the end of the month to renew with Cricket or to cancel service. If Cricket customers visit their usual store locations, which continue to display Cricket signage and hold themselves out as Cricket stores, to renew their monthly service and are offered competing plans and incentives to cancel their service with Cricket, it is likely, for reasons of

5

convenience or confusion, that a substantial number of Cricket customers will switch their service to a competing service.

19. The threat of irreparable harm to Cricket outweighs any harm Platinum PCS might suffer if injunctive relief is granted. Platinum PCS will not be harmed by being compelled to comply with the Dealer Agreement. Cricket seeks to prevent what Platinum PCS has no legal right to do, i.e., violate the Dealer Agreement by diverting Cricket customers to other wireless carriers and competing with Cricket within the six months after termination and within a two-mile radius of any of Platinum PCS's former Cricket store locations.

20. There is a strong likelihood that Cricket will prevail on the merits. The non-compete and non-diversion provisions of the Dealer Agreement are narrowly tailored, reasonable, and enforceable. Platinum PCS has violated the non-compete and non-diversion provisions by selling (directly or indirectly, through its Affiliated Persons, Affiliated Entities, principals, officers, directors, employees, agents, or successor entities, including Platinum PCS Partners) the products and services of other wireless carriers and soliciting, diverting, and attempting to divert Cricket customers to other commercial wireless telephone carriers.

21. The injunctive relief requested by Cricket will not adversely affect the public interest. The public interest weighs in favor of injunctive relief to enforce the non-compete and non-diversion provisions of the Dealer Agreement. An injunction order in this action will serve to advance the important public interest in favor of freely negotiated business contracts freely and protecting companies from unfair competition.

Based upon the forgoing, the Court hereby ORDERS as follows:

1. Cricket's Motion for Temporary Restraining Order is GRANTED;

6

2. Ali Tharani, Platinum PCS, its Affiliated Persons, its Affiliated Entities, its principals, officers, directors, employees, agents, successor entities, including Platinum PCS Partners, and all persons acting in concert with or in active participation with them are hereby ENJOINED from violating the non-competition provision, Section 8(g) of the Dealer Agreement; the non-diversion provision, Section 8(a) of the Dealer Agreement; the confidentiality provisions and other obligations owed to Cricket.

3. Ali Tharani, Platinum PCS, its Affiliated Persons, its Affiliated Entities, its principals, officers, directors, employees, agents, successor entities, including Platinum PCS Partner, and all persons acting in concert or in active participation with them are ENJOINED from, directly or indirectly:

(a) soliciting, diverting or attempting to divert Cricket's customers in violation of Section 8(a) of the Dealer Agreement;

(b) at a store location identified in the Dealer Agreement or any amendment thereto and within two miles of any store location, engaging or participating in, or acquiring, managing, operating, controlling or participating in the management, operation or control of any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet data service (including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price) in violation of Section 8(g) of the Dealer Agreement; and

(c) using or disclosing Cricket's confidential and proprietary information, including their knowledge of Cricket's Customers and prospects and financial information, including pricing.

7

4. This Temporary Restraining Order applies to all store locations identified in the Dealer Agreement and amendments thereto, including the store locations where specific violations have occurred, including, but not limited to the following:

    a.    1928 #C Pulaski Hwy, Edgewood, MD 21040;

    b.    1713 Rosemont Ave., Frederick, MD 21702;

    c.    7954 Belair Road, Baltimore, MD 21236;

    d.    583 Baltimore Pike, Bel Air, MD 21014;

    e.    1010 Beards Hill Road, Suite H, Aberdeen, MD, 21001;

    f.    1222 Eastern Blvd., Essex, MD 21221;

    g.    212 S Bridge Street, Elkton, MD 21921; and

    h.    7 Saint Paul Street, Baltimore, MD 21202.

5. Pursuant to Section 8(i) of the Dealer Agreement, Cricket is not required to post a bond, pending further order of the Court.

6. The Court sets a hearing on Cricket's preliminary injunction on Aug. 2, 2013 @ 3:30pm

7. The Court's automatic stay of discovery is lifted to permit the parties discovery necessary for the hearing on the motion for preliminary injunction.

ENTERED: July, 19th, 2013 at 4:39 P.m.

_____
Judge, United States District Court

8